UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
MICHAEL GOLDSTEIN, GOLDSTEIN                    ECF Case
GROUP HOLDINGS, INC., BERNARD
KAHN, DAVID WEINBERG, and
RAPHAEL KNEPLER,

                Plaintiffs,          11 CIV 6227 (VLB)

    -against-

SOLUCORP INDUSTRIES, LTD., EAST
MORGAN HOLDINGS, INC., LONDON
VENTURES CAPITAL CORP., MICHAEL
REIDEL, RICHARD RUNCO, RICHARD
GREENE, ISRAEL TYBERG, PETER
MANTIA and JOSEPH KEMPROWSKI,

                Defendants.

-------------------------------------------------------X

## PLAINTIFFS' MEMORANDUM OF LAW
## IN OPPOSITION TO MOTION OF JL PROVIDERS TO INTERVENE

Respectfully submitted,

HERZFELD & RUBIN, P.C.
125 Broad Street
New York, New York 10004
(212) 471-8500

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................. 1

STATEMENT OF FACTS ........................................................................ I

ARGUMENT ............................................................................................ 3

    A.  JL FAILS TO ESTABLISH A RIGHT TO INTERVENE BECAUSE
        IT CAN PROTECT ITS PURPORTED INTEREST BY A
        SEPARATE ACTION AND THIS MOTION IS UNTIMELY................... 3

    B.  JL IS NOT ENTITLED TO PERMISSIVE INTERVENTION
        BECAUSE IT WILL SUFFER NO PREJUDICE BY A DENIAL
        AND THIS MOTION IS UNTIMELY..............................................10

CONCLUSION ...................................................................................... II

i

## PRELIMINARY STATEMENT

This is an action for securities fraud, in which the individual Plaintiffs were repeatedly lied to in order to induce them to purchase shares of defendant Solucorp Industries, Ltd. ("Solucorp") and East Morgan Holdings, Inc. ("EMHI"), by defendant Joseph Kemprowski ("Kemprowski"), who passed away in May 2014, and the other defendants. This action has been pending since 2011 and has been delayed several times. Discovery is now essentially complete, though, and Plaintiffs should be allowed to proceed to trial on the merits without further delay.

Non-party JL Providers, Inc. ("JL"), however, is just now moving to intervene, claiming an interest in this action because it loaned money to one of the plaintiffs. JL, having long consulted with the defendants, intentionally delayed bringing this motion to deny Plaintiffs needed discovery into JL's claims, deny Plaintiffs' their rights, and/or to cause yet further, unnecessary delay. If JL has any legitimate claim, it can – as it explicitly acknowledges in its moving papers – file a separate action. JL should not be allowed to intervene here.

## STATEMENT OF FACTS

This action was commenced on September 6, 2011 seeking redress for securities fraud under section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5, and common law causes of action, arising out of a concerted, and oft-repeated scheme by defendants to induce individuals, including plaintiffs, to invest significant amounts of money in defendants' companies. An Amended Complaint was filed and served on July 31, 2012 (Document No. 36) (the "Complaint"). Defendants moved to dismiss the Complaint, which motion the court denied.

As alleged in the complaint, Kemprowski and the other defendants made material misrepresentations to each of the plaintiffs, separately, including plaintiff Michael Goldstein ("Goldstein"), on behalf of himself and his company Goldstein Group Holdings, Inc. ("GGH"),

in order to induce them to purchase stock. As acknowledged by Goldstein, he had borrowed the money to purchase the stock from his acquaintance Joel Landou ("Landou"), JL's principal.

A couple of years ago, while this action was pending, Landou spoke with Samuel Tress (Tress), who is the brother-in-law of defendant Michael Reidel ("Reidel") and is now the Director and CEO of EMHI. According to Tress, Landou told him that the EMHI shares Goldstein had purchased should have been in the name of JL and that all of Goldstein's and GGH's shares should be transferred to JL (i.e., the same claim he is now alleging, years later, in his proposed complaint in intervention). Tress demurred but arranged a meeting at the time between Landou and Kemprowski, attended by Tress and possibly defendant Mantia, in which Landou repeated his claim. *See* Declaration of Robert L. Lash, dated September 10, 2014 ("Lash Decl."), Ex. A, at 42-43. Landou and someone who most likely was his attorney then met with Kemprowski again to discuss how they wanted to proceed. Lash Decl., Ex. B, at 81-83.

After talking it over with the defendants, Landou decided not to make any legal claims against Goldstein or to try to intervene in this action at that time. Then, in March of this year, Landou apparently provided the defendants with two sworn statements (addressed "To whom it may concern") for them to use in this litigation, which Reidel produced in discovery, claiming again that the stock purchased by Goldstein was supposed to be purchased by JL. *See* Lash Decl., Ex. C. Landou attached to those March affidavits as his evidence the same stock purchase agreement he attaches to his moving papers now, which Goldstein had written prior to his execution that the shares were being purchased by JL or GGH and signed on behalf of GGH (Landou agrees that Goldstein was never an officer or employee of JL; but he was of GGH).

2

Lash Decl., Ex. E., at 119. *That agreement is of no importance here, though, because the shares reflected in that agreement were never paid for and are not the subject of this action.[1]*

In May of this year, Reidel's attorney served a subpoena on Landou and JL, which according to submissions made by Reidel's attorney to the court, Landou ignored until this court ordered Landou or his attorney to appear in court. *See* Doc 114. At approximately the same time, Landou and his attorney again began discussions with Tress about this action. Landou repeated his story, but now said that he wanted confidential information from EMHl before he decided whether he would intervene. In July, EMHl and Landou agreed on a non-disclosure agreement ("NDA"), and Tress gave him the confidential information (Tress refused to testify what information he gave Landou). However, Tress made it clear that, "it is my understanding that I will sign NDA, upon Levine [i.e., Landou's attorney] presenting a letter of intervention to the court." Lash Decl., Ex. F. Nearly two months later, Landou fulfilled his part of his *quid pro quo* with the defendants by filing the motion to intervene.

## ARGUMENT

### A. JL FAILS TO ESTABLISH A RIGHT TO INTERVENE BECAUSE IT CAN PROTECT ITS PURPORTED INTEREST BY A SEPARATE ACTION AND THIS MOTION IS UNTIMELY.

"Intervention as of right under Rule 24(a)(2) is granted when all four of the following conditions are met: (1) the motion is timely; (2) the applicant asserts an interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the other parties." *Mastercard Int'l, Inc. v. Visa Int'l Serv. Ass'n*, 471 F.3d 377, 389 (2d Cir. 2006). The applicant bears the burden of demonstrating each of these requirements.

---

[1] Goldstein and GGH did pay for other shares, which are at issue. *See, e.g.*, Lash Decl. Ex. D.

3

*See Floyd v. City of New York*, 2014 U.S. Dist. LEXIS 104945, *35 (S.D.N.Y. Jul. 30, 2014). In this case, JL's motion is neither timely nor has it shown that it would not be able to protect its interests without intervention.

It is settled law that when a putative intervenor is able to maintain a claim in a separate suit there can be no impairment of its ability to protect its interests. *See Rios v. Enterprise Assoc. Steamfitters Local Union #638 of U.A.*, 520 F.2d 352, 357-8 (2d Cir. 1975) ("their application for intervention must be denied for the reason that nothing prevents their obtaining vindication of these rights by way of an independent action"); *SEC v. Canadian Javelin Ltd.*, 64 F.R.D. 648, 650 (2d Cir. 1974) (denying intervention where the instant suit would have no impact on applicants' ability to maintain its own separate suit); *Ionian Shipping Co. v. British Law Ins. Co., Ltd.*, 426 F.2d 186, 190-91 (2d Cir. 1970); *Authors Guild v. Google, Inc.*, 2009 U.S. Dist. LEXIS 102837, *7-8 (S.D.N.Y. Nov. 4, 2009).

The Second Circuit's decision in *Ionian Shipping* is particularly instructive here. In that case, the court wrote:

> Assuming arguendo that Allied…has rights superior to Ionian…we fail to see how the outcome of this litigation could, "as a practical matter impair or impede his ability to protect that interest." Fed.R.Civ.P. 24(a) (2). If Allied is not a party to the suit, then the question of its superior rights cannot arise, for they are irrelevant to Ionian's claim. And if Allied is not a party, and the issue does not arise, and thus is not appropriately litigated, it is hornbook law that Allied's right to assert it in a subsequent suit will not be barred by either collateral estoppel or res judicata.

426 F.2d at 190-91.

Here, JL plainly admits its ability to maintain a separate action, and concedes that denial of intervention would have no impact on its ability to protect its interests. *See* JL's MOL at 7-8 ("In the event that this Court denies the present intervention motion, JL would simply commence

a separate action…"). Thus, regardless of the outcome of the present litigation, JL's rights would stay exactly the same, and in no way would it be precluded from maintaining an action to vindicate those interests. JL even concedes that its "claim to ownership of the shares which are the subject of the instant action is a right that is independent of the claims of Goldstein or GGH, and is not dependent on those claims." JL MOL at 8. In other words, in attempting to intervene, JL is seeking to assert its claims to the shares at issue (which it may do in a separate action), and is not seeking to protect its interest in the shares. *See TPI Corp. v. Merchandise Mart of South Carolina*, 61 F.R.D. 684, 688 (D.S.C. 1974) (applicants "will still be able to press their claims against plaintiff in [state court, and thus they] have no interest to protect in this lawsuit, only an interest to assert"). Moreover, any added cost or expense in maintaining a separate suit, or any loss of synergy by not being able to join this action, is immaterial. *See Weisshaus v. Swiss Bankers Ass'n (In re Holocaust Victim Assets Litig.)*, 225 F.3d 191, 203 (2d Cir. 2000) ("the fact that applicants in this case will face many significant obstacles if they file their own lawsuit does not as a matter of law require their intervention"). Even the possibility that a litigant will divest itself of the assets and be rendered judgment proof does not impair the applicant's interests. *See Southmark Corp. v. Cagan*, 950 F.2d 416, 418-19 (7th Cir. 1991).

Regardless, any motion for intervention must be timely. "Factors to consider in determining timeliness include: (a) the length of time the applicant knew or should have known of its interest before making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to the applicant if the motion is denied; and (d) the presence of unusual circumstances militating for or against a finding of timeliness." *Mastercard Int'l*, 471 F.3d at 390 (quotations and alterations omitted).

5

"Whether a motion to intervene is 'timely' is driven heavily by an analysis of prejudice." *Authors Guild*, 2009 U.S. Dist. LEXIS 102837, at *5-6 . As discussed above, there will be no prejudice to JL if the motion to intervene is denied, because, as JL admits, it can simply file a separate suit to protect its interests. The Second Circuit has held that this same factor that vitiates the third element of intervention as of right also vitiates any claim of prejudice by the applicant if the motion is denied. *See Weisshaus*, 225 F.3d at 199 ("Because appellants remain free to file a separate action, they have not established that they will be prejudiced if their motion to intervene is denied.").

JL's conclusory assertions that it will suffer prejudice if intervention is denied should be disregarded and afforded no weight in meeting its burden. JL baldly states that "In the event that this matter proceeds without JL, there is substantial likelihood that issues of fact and/or law will be decided which directly affect its right." JL MOL at 5-6. However, JL entirely fails to indicate how this is so, in what way it will be prejudiced, and how the instant action could possibly impact its rights, whether through collateral estoppel, res judicata, or otherwise. *See United States v. Covington Cnty. Sch. Dist.*, 499 F.3d 464, 466 (5th Cir. 2007) (applicant has the burden to plead and prove what prejudice it will suffer, and even if prejudice is possible, the court may not supply reasons where this burden is not met). In fact, JL may even benefit from the airing and adjudication of issues by this court, which may bring to light strategies and tactics, and even settle matters which will not impact JL's interests. *See SEC v. Everest Management Co.*, 475 F.2d 1236, 1240 (2d Cir. 1972). Plainly, as discussed above, JL will not be prejudiced if intervention is denied.

On the other hand, allowing intervention would unnecessarily add new issues to this already complex case – issues which JL admits are collateral and not dependent or intertwined

with the instant parties' claims or defenses. *See* JL MOL at 8 (conceding that its "claim to ownership of the shares…is a right that is independent of the claims of Goldstein or GGH, and is not dependent on those claims"). This is because JL's claims are simply to assert a superior claim of title to the subject shares, which has no bearing on the current parties' fraud dispute, and cannot influence the current dispute one way or the other. Even recognizing some common issues, "Intervention cannot be used as a means to inject collateral issues into an existing action." *Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990). Indeed, "the complicating effect of the additional issues and additional parties outweighs any advantage of a single disposition of the common issues." *SEC v. Everest Management Co.*, 475 F.2d 1236, 1240 (2d Cir. 1972); *see also Sellers v. United States,* 709 F.2d 1469, 1472 (11th Cir. 1983) ("intervention proposed would have expanded this litigation to include disputes about ownership of property…").

Furthermore, allowing intervention would prejudice the existing parties by further delaying this nearly trial-ready case – a case which has already been mired by delay after delay. Of course there is no precise stage of a case after which intervention is untenable, but under the circumstances presented here the instant case has proceeded so far along that allowing intervention would cause significant prejudice to the parties. *See NAACP v. New York*, 413 U.S. 345, 366 (1973); *Schonfeld v. City of New York*, 14 F. App'x 128, 131 (2d Cir. 2001).

This case has had numerous stops and starts. Defendants Kemprowski and Runco have already died during this litigation. Defendant Mantia's attorney has indicated that Mantia is in poor health and has a terminal disease. Defendant Greene has started a prison sentence. Defendants Solucorp and London Ventures have failed to appear for deposition, because as their attorney has stated they have no officers or employees and fading, if any, assets. EMHI has

testified that it has almost no assets and the little it does have is being consumed by this litigation. Therefore, time is of the essence.

Although JL indicates that no additional discovery would be necessary, that is conclusory, self-serving, and patently untrue. Although Landou has finally agreed to be deposed pursuant to the subpoena Reidel served upon him in May, Landou has failed thus far to produce any documents. Goldstein would now have to serve his own document requests on Landou and JL, and may seek additional testimony from Landou beyond the scope of or allotted time available pursuant to Reidel's subpoena.

It is also likely that additional non-party subpoenas for documents and testimony will need to be served addressed solely to JL's new claim – which has absolutely nothing to do with the allegations in the Complaint. Having JL intervene, at this relatively late stage of the proceedings, will require re-opening discovery to inquire into the dealings between Landou and Goldstein, essentially requiring two completely different cases to be litigated in one.

Moreover, JL's claims have absolutely nothing to do with the other plaintiffs: Kahn, Weinberg, and Knepler. Their case against the defendants should not be sidetracked because Landou waited until now to inform the court that he may have a dispute with Goldstein.

Additionally, the timing of this application shows a deliberate attempt to derail the progress of this case just as discovery is completing. As explained above, JL knew about its interests earlier, but after repeated consultation with the defendants, Landou held-off on filing until just the right moment to maximize the disruption and delay its intervention would cause. Therefore, with JL suffering no prejudice on the one hand, and the current parties suffering significant prejudice on the other, this factor weighs decidedly in favor of denying this motion.

8

Finally, the length of JL's delay in seeking intervention vitiates timeliness under Rule 24. Delay is measured objectively from when the applicant had actual or constructive notice of an unrepresented interest based on consideration of a variety of circumstances. *See Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 182 (2d Cir. 2001); *Floyd*, 2014 U.S. Dist. LEXIS 104945, *55-56 (S.D.N.Y. Jul 30, 2014). "A prospective intervenor must move promptly to intervene as soon as it knows or has reason to know that its interests might be adversely affected." *Heartwood, Inc. v. United States Forest Serv.*, 316 F.3d 694, 701 (7th Cir. 2003). Notice of the events leading to the litigation can provide a basis for a finding of untimeliness. *Schonfeld*, 14 F. App'x at 131; *see also United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 71 (2d Cir. 1994). Here, Landou and his lawyer repeatedly met with Kemprowski, EMHI and other defendants, over the course of several years, to discuss his claims and to strategize. Now, Landou wants to intervene, ostensibly to protect his rights as a plaintiff. In the language spoken by most of the parties in this case, that takes chutzpah.

Even if Landou were to claim that he that he just learned about this suit (which we believe would be perjury on his part, if said under oath), it is not the actual knowledge of the suit that triggers the clock, but when the applicant should have known its interests might not be protected. *See Floyd*, 2014 U.S. Dist. LEXIS 104945, *48-50; *Hnot v. Willis Group Holdings Ltd.*, 2006 U.S. Dist. LEXIS 87091, *7-8 (S.D.N.Y. Nov. 30, 2006). It is now over three years since this suit was commenced, and thus JL's extensive delay makes this application untimely. *See NAACP*, 413 U.S. at 366 (three month since commencement); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001) (finding delay where "Appellant filed his motion to intervene...more than a year after the complaint was filed"); *Weisshaus*, 225 F.3d 191, 198-99 (2d Cir. 2000) (eight month delay); *see also Pitney Bowes*, 25 F.3d at 71 (eight months).

9

Because the parties will suffer prejudice if intervention is allowed, and JL will suffer no prejudice if intervention is denied, coupled with JL's lengthy delay in filing its application, this motion is untimely and should be denied.

## B. JL IS NOT ENTITLED TO PERMISSIVE INTERVENTION BECAUSE IT WILL SUFFER NO PREJUDICE BY A DENIAL AND THIS MOTION IS UNTIMELY.

Substantially the same factors are considered in determine whether or not a court may grant an application for permissive intervention as control intervention as of right. *See Hnot*, 234 Fed. App'x at 14; *Kaliski v. Bacot (In re Bank of N.Y. Derivative Litig.)*, 320 F.3d 291, 300 n.5 (2d Cir. 2003). Thus permissive intervention should thus be denied for the same reasons.

First, as discussed above, JL will suffer no prejudice if the application is denied because it may maintain a separate action to vindicate its rights. "When an applicant has other means of asserting its rights, a charge of abuse of discretion in the denial of a motion for permissive intervention would appear to be almost untenable on its face." *Worlds v. Dep't of Health and Rehabilitative Servs. of Florida*, 929 F.2d 591, 595, n.20 (11th Cir. 1991) *(per curiam)*.

Second, as discussed above, this motion is untimely. Although granting or denying permissive intervention is discretionary, Fed. R. Civ. P. 24(b) requires any motion for intervention to be "timely." *See Wingate v. Gives*, 2009 U.S. Dist. LEXIS 12592, *18 (S.D.N.Y. Feb. 13, 2009). This motion is not timely because the current parties will suffer prejudice and delay if intervention is granted, while the applicant will suffer no prejudice. Further, as discussed above, JL's delay in filing suit make this motion untimely.

JL is not a party to this suit, and its motion for a constructive trust is facially untenable. JL may make such a motion before a court of competent jurisdiction if and when it becomes a party to a suit.

10

## **CONCLUSION**

For the reasons, Plaintiffs respectfully ask the court to deny JL's application to intervene

in its entirety.

Dated: New York, New York
       September 10, 2014

HERZFELD & RUBIN, P.C.

By: _s/ Robert L. Lash_____
       Robert L. Lash (RL 0925)
       *Attorneys for Plaintiffs*
       125 Broad Street, 12th Floor
       New York, New York 10004
       Telephone (212) 471-8500
       rlash@herzfeld-rubin.com

11