UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| MICHAEL GOLDSTEIN, *et al.*,<br><br>                    Plaintiffs,<br>    -against-<br><br>SOLUCORP INDUSTRIES, LTD., *et al.*,<br><br>                Defendants. | 11-CV-6227 (VB)(PED) |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE
"LETTER-MOTIONS" FOR SUMMARY JUDGMENT SUBMITTED BY
<u>DEFENDANTS ISRAEL TYBERG AND RICHARD GREENE</u>**

Respectfully submitted,

HERZFELD & RUBIN, P.C.
125 BROAD STREET
NEW YORK, NEW YORK 10004
(212) 471-8500

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ...............................................................................ii

PRELIMINARY STATEMENT ........................................................................1

INTRODUCTION AND FACTUAL BACKGROUND..................................1

LEGAL ARGUMENT .......................................................................................5

    I. The "Letter-Motions" Submitted by Defendants Tyberg and Greene are Procedurally Deficient under Local Civil Rule 56.1, Warranting Outright Denial ............................5

    II. The "Letter-Motions" Submitted by Defendants Tyberg and Greene Are Substantively Deficient under Fed. R. Civ. P. 56, Warranting Outright Denial ...................................7

       A. Standard for Summary Judgment........................................................7

       B. Defendants Tyberg and Greene have Failed to Satisfy their Prima Facie Burden.....8

    III. Even if the Deficiencies of Defendants' "Letter-Motions" are Overlooked, the Contentions Set Forth Therein do Not Entitle Defendants to Summary Relief.............9

       A. Plaintiffs' Securities Fraud Claims, under Section 10(b) of the Exchange Act and SEC Rule 10b-5, should be Upheld as to Defendants Tyberg and Greene...............9

       B. Plaintiffs' Fraud Claims should be Upheld as to Defendants Tyberg and Greene ..14

       C. Plaintiffs' Promissory Estoppel Claims should be Upheld as to Defendants Tyberg and Greene ...........................................................................................15

       D. Plaintiffs' Unjust Enrichment Claims should be Upheld as to Defendants Tyberg and Greene ...........................................................................................16

CONCLUSION ...............................................................................................17

# TABLE OF AUTHORITIES

Page

**Cases**

*Affiliated Ute Citizens v. United States*, 406 U.S. 128, (1972)...................................................13

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...............................................................7

*Ashland Inc. v. Morgan Stanley & Co.*, 652 F.3d 333 (2d Cir. 2011)............................................16

*Benyard v. White Plains Hospital Medical Center*, No. 12 Civ. 1810,
 2013 U.S. Dist. LEXIS 161752, *8 (S.D.N.Y. 2013) .................................................................7

*Bristol Myers Squibb Co. Sec. Litig.*, 586 F. Supp. 2d 148 (S.D.N.Y. 2008) ........................10, 11

*Celotex Corp. v. Catrett*, 477 U.S.317 (1986) ...........................................................................7

*Cereus Prod. Dev., Inc. v. Boom LLC*, No. 14 Civ. 4292,
 2015 U.S. Dist. LEXIS 73503, *21 (S.D.N.Y. June 5, 2015)....................................................16

*Dodona I, LLC v. Goldman, Sachs & Co.*, 847 F. Supp. 2d 624 (S.D.N.Y. 2012) ......................14

*ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
 553 F.3d 187 (2d Cir. 2009)...................................................................................................11

*Ernst & Ernst v. Hochfelder*, 425 U.S. 185, n. 12 (1976) .......................................................11, 12

*Grandon v. Merrill Lynch & Co.*, 147 F.3d 184 (2d Cir. 1998) ..................................................11

*Handelsman v. Gilford Secur., Inc.*, 726 F. Supp. 673 (N.D. Ill. 1989) .......................................13

*Herzfeld v. Laventhol, Krekstein, Horwath & Horwath*, 540 F.2d 27 (2d Cir. 1976)...................12

*Holtz v. Rockefeller & Co.*, 258 F.3d 62 (2d Cir. 2001).............................................................5, 6

*Lentell v. Merrill Lynch & Co., Inc.*, 396 F3d 161 (2d Cir. 2005) ..........................................12, 13

*Moerman v. Zipco, Inc.*, 302 F. Supp. 439 (E.D.N.Y. 1969) .......................................................10

*MTV Networks v. Lane*, 998 F. Supp. 390 (S.D.N.Y. 1998) ........................................................8

*Optimal U.S. Litig.*, 837 F. Supp. 2d 244 (S.D.N.Y. 2011)........................................................14

*REA Express, Inc. v. Interway Corp.*, 410 F. Supp. 192 (S.D.N.Y. 1976)...................................11

*Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295 (2d Cir. 1996)............................................15

*Rossi v. New York City Police Dep't*, No. 94 Civ. 5113, 1998
  WL 65999, *4 (S.D.N.Y. Feb. 17, 1998) ................................................................6

*Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91 (2d Cir. 1997)* .....................................14

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148 (2008) ...........................10

*Suares v. Cityscape Tours, Inc.*, No. 11 Civ. 5650, 2014
  U.S. Dist. LEXIS 33228, **13-15 (S.D.N.Y. Mar. 12, 2014) .................................................6, 9

*Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87 (2d Cir. 2001) ..................13

*Wilson v. Comtech Telecommunications Cor.*, 648 F.2d 88 (2d Cir. 1981) ...................................12

**Statutes**

Securities Exchange Act of 1934, 15 U.S.C. §78j(b) ..........................................................9

SEC Rule 10b-5, 17 C.F.R. § 240.10b-5(b) ....................................................................9

**Rules**

Fed. R. Civ. P. 56..................................................................................1, 5, 6, 7

Fed. R. Civ. P. 56(c)(1)(A) ......................................................................................7

Fed. R. Civ. P. 56(e) .............................................................................................8

Local Civil Rule 56.1(a) .......................................................................................5, 6

## PRELIMINARY STATEMENT

Plaintiffs Michael Goldstein ("Goldstein"), Goldstein Group Holdings, Inc. ("GGH"), Bernard Kahn ("Kahn"), David Weinberg ("Weinberg"), and Raphael Knepler ("Knepler"), by and through their attorneys, Herzfeld & Rubin, P.C., respectfully submit this Memorandum of Law in opposition to the purported "letter-motions" for summary judgment submitted by defendants Israel Tyberg ("Tyberg") and Richard Greene ("Greene").  The purported letter motions should be denied in their entirety because: 1) defendants have failed to follow the procedures set forth the Fed. R. Civ. P. 56 for summary judgment; 2) defendants have made no prima facie showing that they are entitled to judgment as a matter of law on any of the claims asserted in the complaint; and 3) even if defendants had made such a prima facie showing, there is sufficient evidence in the record to, at a minimum, raise triable issues of material fact with respect to every cause of action.

## INTRODUCTION AND FACTUAL BACKGROUND

This action arises from defendants' collective and purposeful involvement in the design and execution of a fraudulent "pump and dump" scheme by which defendants artificially inflated (i.e., "pumped") and otherwise misrepresented the value of defendants Solucorp Industries, Ltd. ("Solucorp") and East Morgan Holdings, Inc. ("EMHI").  Defendants conspired through the use of manipulative tactics to secure profits by "dumping" the companies' inflated shares on unsuspecting, less-sophisticated investors like Plaintiffs. As set forth in greater detail herein, Defendants Tyberg and Greene were active participants in this scheme and benefitted from their fraudulent acts through the receipt of improper commissions and other payments.  Defendants Greene and Tyberg misrepresented themselves and the business opportunity they were offering

plaintiffs in furtherance of this scheme. Plaintiffs reasonably relied on the fraudulent misrepresentations of Tyberg and Greene and were defrauded of over $1,000,000 in the process.

Defendant Greene—a disbarred attorney, who had his law license revoked after pleading guilty to felony securities fraud in September 2003[1]—was an agent of both Solucorp and EMHI,[2] and was personally responsible for helping Solucorp, a repeat securities fraud offender,[3] escape the stigma of its checkered past by locating and purchasing EMHI, as a "shell company." This purchase was viewed by defendants as a vehicle through which they could transfer various debt-ridden but purportedly valuable environmental patents and technologies belonging to Solucorp to a new corporation without the stigma of Solucorp's checkered history. The transfer would allow the schemers to attract new investors without having to fully explain Solucorp's and the conspirators' criminal history and would thereby enable defendants to pay off their debts while lining their pockets in the process.[4]

Greene was introduced as, and held himself out to be, the attorney for EMHI—ostensibly to add an air of legitimacy to the defendants' scheme.[5] It was in this capacity that Greene participated in a multitude of conference calls between defendants and potential EMHI investors, including plaintiffs. In fact, Greene participated in a number of calls soliciting the June 2010 investments by plaintiffs Goldstein and GGH.[6] During these calls, Greene represented that the environmental technologies being transferred to EMHI would net the company $30 million

[1] Pls.' Second Am. Compl., Ex. 1, at ¶79, Ex. B; Goldstein Dep. Tr., Ex. 2, at p.146; Defs.' Oct. 25, 2013 RFA Responses, Ex. 8, at p. 4; Greene Dep. Tr., Ex. 7, at pp. 6-7.
[2] Pls.' Second Am. Compl., Ex. 1, at ¶19; Goldstein Dep. Tr., Ex. 2, at p.146; Greene Dep. Tr., Ex. 7, at pp. 93-95.
[3] Pls.' Second Am. Compl., Ex. 1, at ¶¶24-29, Ex. A; Goldstein Dep. Tr., Ex. 2, at p.146.
[4] Pls.' Second Am. Compl., Ex. 1, at ¶¶45-46; Goldstein Dep. Tr., Ex. 2, at pp. 53-54, 146; Reidel Dep. Tr., Ex. 4, at p. 25; Mantia Dep. Tr., Ex. 6, at pp.21, 31-33; Greene Dep. Tr., Ex. 7, at pp. 70-73, 76-81.
[5] Pls.' Second Am. Compl., Ex. 1, at ¶77; Goldstein Dep. Tr., Ex. 2, at pp. 65-66, 146; Greene Dep. Tr., Ex.7, at p. 338.
[6] Pls.' Second Am. Compl., Ex. 1, at ¶¶77, 81; Goldstein Dep. Tr., Ex. 2, at p.146; Mantia Dep. Tr., Ex. 6, at p. 25; Greene Dep. Tr., Ex. 7, at p. 149.

annually under the terms of an existing agreement between Solucorp and a major solar company by the name of First Solar, the rights to which had been assigned to EMHI.[7] Although there was a contract between Solucorp and First Solar, it was worth significantly less than what Greene represented, having a maximum payout of $8,260,000 over the life of the contract.[8] Similarly deceiving was Greene's admitted representation to Goldstein during various calls that EMHI was about to file an S-1 Registration that would render all restricted shares of the company freely tradable within 30-150 days.[9] No such registration was ever completed,[10] and Greene knew that it "would be a problem" for a company such as EMHI to register successfully, given the history of securities fraud amongst its principals.[11]

Greene also served as the escrow agent in connection with the transactions.[12] He was compensated by EMHI for his services,[13] but also received a commission of at least 20,000 EMHI shares for his efforts in securing plaintiffs Goldstein and GGH as investors.[14] What Greene refrained from doing during this timeframe, was informing plaintiffs Goldstein and GGH that he had previously pled guilty to federal securities fraud charges, and/or that he was subsequently disbarred in connection therewith.[15] Had Goldstein known of these material

---

[7] Pls.' Second Am. Compl., Ex. 1, at ¶¶77, 81; Goldstein Dep. Tr., Ex. 2, at p.146; Mantia Dep. Tr., Ex. 6, at p. 25; Greene Dep. Tr., Ex. 7, at pp. 333-334.

[8] Goldstein Dep. Tr., Ex. 2, at pp. 132-133; First Solar Agreement, Ex. 9, at p. 16.

[9] Pls.' Second Am. Compl., Ex. 1, at ¶77; Goldstein Dep. Tr., Ex. 2, at p.146; Greene Dep. Tr., Ex. 7, at pp. 152-153.

[10] Greene Dep. Tr., Ex. 7, at p. 299.

[11] Greene Dep. Tr., Ex. 7, at p. 25.

[12] Mantia Dep. Tr., Ex. 6, at pp. 31-33; Greene Dep. Tr., Ex. 7, at pp.189-190.

[13] See *infra* note 48, and accompanying text.

[14] Pls.' Second Am. Compl., Ex. 1, at ¶¶77-78, 93, 157; Goldstein Dep. Tr., Ex. 2, at p.146; EMHI Ownership Registrar, Ex. 10, at p. 21.

[15] Pls.' Second Am. Compl., Ex. 1, at ¶79; Goldstein Dep. Tr., Ex. 2, at p.146; Greene Dep. Tr., Ex. 7, at pp. 335, 338.

misrepresentations and omissions on the part of defendant Greene, he and GGH would never have invested more than $1,000,000 in EMHI in June 2010.[16]

Equally troubling is defendant Tyberg's role in defrauding plaintiffs Goldstein and GGH. It was through Tyberg—a commissioned agent of EMHI tasked with soliciting potential investors—that plaintiffs Goldstein and GGH first learned of EMHI in May 2010.[17] In the weeks that followed, but prior to the June 2010 investments of Goldstein and GGH, Tyberg spoke with Goldstein on several occasions.[18] During these calls, Tyberg vigorously pressured Goldstein to invest in EMHI, going so far as to inform Goldstein that time was of the essence, because he was positive that EMHI had an agreement in place for Goldman Sachs to act as a market maker, which would have the effect of raising EMHI's share price from approximately $0.40 per share to $7.00 per share, in a matter of weeks.  This would allow Goldstein and GGH to liquidate their positions in EMHI quickly at a substantial profit.[19] Tyberg made these representations despite the fact that he had never seen an agreement of any kind between EMHI and Goldman Sachs.[20] Plaintiffs Goldstein and GGH reasonably relied on the representations and invested substantial amounts in EMHI based on the fraudulent statement of defendants, with disastrous results: Goldman Sachs never acted as a market maker (because there was never any agreement to begin with);[21] plaintiffs were left holding undesirable EMHI shares, the value of which had been artificially inflated by defendants in the weeks leading up to the investments of Goldstein and

---

[16] Pls.' Second Am. Compl., Ex. 1, at ¶¶80, 82; Goldstein Dep. Tr., Ex. 2, at p.146; Goldstein and GGH Stock Sale Agreements and Corresponding Checks, Ex. 11.
[17] Pls.' Second Am. Compl., Ex. 1, at ¶¶20, 49; Goldstein Dep. Tr., Ex. 2, at pp.34, 146; Tyberg Dep. Tr., Ex. 5, at pp. 25-27, 44.
[18] Pls.' Second Am. Compl., Ex. 1, at ¶¶60-62, 81; Goldstein Dep. Tr., Ex. 2, at p.146; Tyberg Dep. Tr., Ex. 5, at pp. 8-9, 45.
[19] Pls.' Second Am. Compl., Ex. 1, at ¶¶60-62, 81; Goldstein Dep. Tr., Ex. 2, at pp. 47, 54-55, 146; Tyberg Dep. Tr., Ex. 5, at p. 27.
[20] Tyberg Dep. Tr., Ex. 5, at p. 17.
[21] Goldstein Dep. Tr., Ex. 2, at pp. 131-132; Tress Dep. Tr., Ex. 3, at p. 143; Reidel Dep. Tr., Ex. 4, at pp. 22, 38; Defs.' Oct. 25, 2013 RFA Responses, Ex. 8, at pp. 3-4.

GGH; and Tyberg walked away with a hefty commission in the form of 407,000 EMHI shares for his efforts recruiting plaintiffs Goldstein and GGH and inducing them to become EMHI investors.[22] Said shares were initially issued to a religious entity named "Friends of Ohr Matityahu" at Tyberg's direction, but Tyberg ultimately took possession of these shares and sold them for a profit of $15,000.[23]

Against the foregoing background, which is firmly established—and almost entirely undisputed—in the record before this Court, plaintiffs respectfully request an Order denying the respective summary judgment "letter-motions" of defendants Tyberg and Greene in their entirety.

## LEGAL ARGUMENT

I.   **The "Letter-Motions" Submitted by Defendants Tyberg and Greene are Procedurally Deficient under Local Civil Rule 56.1, Warranting Outright Denial**

Local Civil Rule 56.1(a) expressly provides that "[u]pon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." *Id.* The purpose of this rule is "to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001) (citations omitted).

So as to effectuate this important purpose, Local Civil Rule 56.1 (a) goes on to make clear, in unequivocal terms, that "[f]ailure to submit such a statement may constitute grounds for denial of the motion." *Id.* (emphasis added). Indeed, courts throughout the Southern District of

---

[22] Pls.' Second Am. Compl., Ex. 1, at ¶89, 93-94, Ex. C; Goldstein Dep. Tr., Ex. 2, at p.146; Tyberg Dep. Tr., Ex. 5, at pp.29-30; EMHI Ownership Registrar, Ex. 10, at p. 9.

[23] Tyberg Dep. Tr., Ex. 5, at pp. 29-43; EMHI Ownership Registrar, Ex. 10, at p. 9.

New York routinely deny Fed. R. Civ. P. 56 motions due to the existence of procedural deficiencies under Local Rule 56.1(a). *See, e.g., Suares v. Cityscape Tours, Inc.*, No. 11 Civ. 5650, 2014 U.S. Dist. LEXIS 33228, **13-15 (S.D.N.Y. Mar. 12, 2014) (denying plaintiffs' motion for summary judgment because her Local Civil Rule 56.1(a) statement contained absolutely no citations to the record*); Rossi v. New York City Police Dep't*, No. 94 Civ. 5113, 1998 WL 65999, *4 (S.D.N.Y. Feb. 17, 1998) (denying plaintiff's motion for summary judgment because of his failure to annex a Local Civil Rule 56.1(a) statement of material facts). A similar result should follow here as defendants Tyberg and Greene have inexplicably failed to annex a Local Civil Rule 56.1(a) statement to their respective letter-motions for summary judgment.

Despite the fact that defendants are proceeding *pro se*, their failure to follow the procedural requirements of Rule 56 warrants denial of their motions. While "a district court has broad discretion whether to overlook a party's failure to comply with local court rules," (*Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001)), the circumstances of this action make their failure to follow even the most basic procedural requirements particularly egregious. Not only were defendants Tyberg and Greene expressly advised of the procedural requirements of Fed. R. Civ. P. 56 by this Court at the May 8, 2015 conference—they were afforded *more than two months* to familiarize themselves with said requirements and file formal motions for summary judgment. (*See* ECF No. 188). This Court even went so far as to afford defendant Greene—a former attorney, who undoubtedly has at least some familiarity with motion practice in the federal system, having practiced law for approximately 18 years[24]—an additional 23 days to file his motion for summary judgment. (ECF Nos. 185-186). In both cases, this Court's courtesies were met with utterly deficient, one-page letters, entirely devoid of support in evidentiary form.

---

[24] Greene Dep. Tr., Ex. 7, at pp. 13-16, 26.

Plaintiffs respectfully request that this Court deny as procedurally deficient the "letter-motions" for summary relief submitted by defendants Tyberg and Greene.

## II.   The "Letter-Motions" Submitted by Defendants Tyberg and Greene Are Substantively Deficient under Fed. R. Civ. P. 56, Warranting Outright Denial

### A.   Standard for Summary Judgment

A party is entitled to summary judgment only where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of demonstrating the absence of any genuine dispute or issue of material fact by pointing to evidence in the record, "including depositions, documents . . . [and] affidavits or declarations," (Fed. R. Civ. P. 56(c)(1)(A)), "which it believes demonstrate[s] the absence of a genuine issue of material fact[.]" *Celotex Corp. v. Catrett*, 477 U.S.317, 323 (1986). Only where the moving party has fulfilled its preliminary burden does the onus shift to the non-moving party to raise the existence of a genuine dispute of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986); *Benyard v. White Plains Hospital Medical Center*, No. 12 Civ. 1810, 2013 U.S. Dist. LEXIS 161752, *8 (S.D.N.Y. 2013).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. *Anderson, supra*, 477 U.S. at 248; *Benyard, supra*, at *8. The Court must not resolve disputed facts, weigh the evidence or make determinations of credibility. *Anderson, supra*, 477 U.S. at 249; *Benyard, supra*, at *9. Rather, the Court must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-movant's favor. *Anderson, supra*, 477 U.S. at 249; *Benyard, supra*, at *9. As outlined in greater detail *infra*, application of these standards should

7

result in the outright denial of the "letter-motions" for summary relief submitted by defendants Tyberg and Greene in this action.

**B.     Defendants Tyberg and Greene have Failed to Satisfy their Prima Facie Burden**

In light of the exacting summary judgment standard set forth above, defendants Tyberg and Greene have failed to carry their respective prima facie burdens as summary judgment movants. They have failed to set forth any supporting evidence in admissible form, and have refrained from citing to a single statute or court decision that might entitle them to the summary relief sought in their "letter-motions." Fed. R. Civ. P. 56(e). *See also, MTV Networks v. Lane,* 998 F. Supp. 390, 393 (S.D.N.Y. 1998) ("To carry his burden on this motion [for summary judgment], [movant] must present material in a form admissible in evidence") (citations omitted). In fact, neither defendant has presented a scintilla of evidence in admissible form in support of their purported motions. Instead, defendants have submitted conclusory statements in letter form, not sworn to, and without reference to any material in the record. These bare assertions that they are entitled to summary relief are wholly inadequate and should be denied without further consideration.

Defendants have been afforded every opportunity to familiarize themselves with the relevant procedures and have been granted every extension of time requested.[25] Given these facts, their non-compliance is particularly egregious—even in light of their status as *pro se* defendants—and counsels against the extension of any further courtesies by this Court. Instead, plaintiffs respectfully request that the "letter-motions" of defendants Tyberg and Greene be denied in their entirety, because "[w]ithout proper factual support, [defendants Tyberg and

---

[25] See *supra* p. 7.

Greene] cannot demonstrate there are no genuine issues of material facts, or that [they are] entitled to judgment as a matter of law." *Suares, supra,* at *15.

## POINT III

**III.    Even if the Deficiencies of Defendants' "Letter-Motions" are Overlooked, the Contentions Set Forth Therein do Not Entitle Defendants to Summary Relief**

    **A.    Plaintiffs' Securities Fraud Claims, under Section 10(b) of the Exchange Act and SEC Rule 10b-5, should be Upheld as to Defendants Tyberg and Greene**

In addition to common law claims, plaintiffs have alleged federal securities fraud claims against defendants Tyberg and Greene pursuant to § 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5(b). Section 10(b) of the Exchange Act makes it unlawful to "use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may proscribe." 15 U.S.C § 78j(b). While SEC Rule 10b-5 provides, in relevant part, that it is unlawful "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5(b). Defendants have submitted no evidence in admissible form to support dismissal of these claims. On that basis alone, defendants' purported motions should be denied. Even if defendants had met their burden and made a prima facie showing of entitlement to dismissal, summary judgment must be denied because the record is replete with support for plaintiffs' securities fraud claims.

To prevail against defendants Tyberg and Greene on said claims, plaintiffs must ultimately demonstrate: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of

a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation. *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008) (citations omitted). As set forth below, there is no basis upon which to grant the requests of defendants Tyberg and Greene for summary relief as to plaintiffs' securities fraud claims.

The record in this action is rife with meaningful misrepresentations and omissions attributable to defendants Tyberg and Greene over the course of defendants' pre-investment solicitation of plaintiffs Goldstein and GGH in May-June 2010. Defendant Tyberg admits to having personally informed plaintiff Goldstein that he could maintain a short-term position in the company at a large profit in light of the fact that EMHI had an agreement in place with Goldman Sachs, the terms of which obligated the investment titan to set the market for EMHI at $7.00 per share in the coming weeks.[26] Defendants have since admitted that no such agreement ever existed.[27] Greene supported Tyberg's material representations by deceptively holding himself out as EMHI's attorney, failing to mention that he had previously pled guilty to federal securities fraud in September 2003, vastly overstating the annual revenue stream that was being assigned to EMHI under the terms of the First Solar agreement, and deceitfully ensuring Goldstein that EMHI shares would be freely tradable within 30-150 days.[28]

These misrepresentations and omissions on the part of defendants Tyberg and Greene were plainly material to plaintiff Goldstein's decision to invest in EMHI individually and on behalf of GGH, "in the sense that a reasonable man would have attached importance to [each of them] in determining his course of action[,]" under similar circumstances. *Moerman v. Zipco, Inc.*, 302 F. Supp. 439, 446 (E.D.N.Y. 1969) (citations omitted) (setting forth the Second Circuit standard for materiality in the context of Exchange Act claims). *See also, In re Bristol Myers*

---

[26] See *supra* note 19, and accompanying text.
[27] See *supra* note 21, and accompanying text.
[28] See *supra* notes 5-11, 15, and accompanying text.

10

*Squibb Co. Sec. Litig.*, 586 F. Supp. 2d 148, 160 (S.D.N.Y. 2008) (internal quotations and citations omitted) ("Information is considered material if there is a substantial likelihood that the disclosure of the omitted [information] would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available."). Because just as "earnings projections of a company [have long been held to] constitute a prime factor in estimating the worth of its stock," *REA Express, Inc. v. Interway Corp.*, 410 F. Supp. 192, 198 (S.D.N.Y. 1976), rev'd on other grounds, 538 F.2d 953 (2d Cir. 1976), there is no question that the veracity and criminal history of a company's promoters, the prospective future market value of a company, and the timing of restrictions on a company's shares are factors of substantially equal significance to reasonable securities investors.

The misrepresentations and omissions were likewise intended by defendants Tyberg and Greene to manipulate and defraud plaintiffs' Goldstein and GGH, satisfying the scienter requirement for plaintiffs' claims under the Exchange Act and its implementing regulation. *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193, n. 12 (1976) (indicating that in the context of the Exchange Act, the term "scienter" refers to "a mental state embracing intent to deceive, manipulate, or defraud.").[29] Indeed, the record makes clear that defendants Tyberg and Greene were authorized agents of EMHI, who were operating in said capacities during their interactions with plaintiff Goldstein in May and June 2010.[30] Defendants Tyberg and Greene were in line to, and ultimately did, receive compensation from EMHI in return for their efforts in deceitfully

---

[29] At the very least, plaintiffs submit that the scienter requirement has been satisfied in that the record supports a finding that defendants Tyberg and Greene were reckless, each having engaged in knowing misconduct constituting "an extreme departure from the standards of ordinary care." *ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009) (indicating that "[i]n addition to intent, recklessness is a sufficiently culpable mental state for securities fraud in this circuit."); *Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 194 (2d Cir. 1998) ("The element of scienter, as used in conection with the securities fraud statutes, requires a plaintiff to show that the defendant acted with intent to deceive, manipulate or defraud, *or at least knowing misconduct.*") (emphasis added).

[30] See *supra* notes 2, 17, and accompanying text.

securing the investments of plaintiffs Goldstein and GGH.[31] This showing of motive attributable

to defendants Tyberg and Greene serves to solidify plaintiffs' scienter showing. *See ECA, supra*,

553 F.3d at 198 ("The requisite scienter can be established [through] facts showing either (1) that

defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial

evidence of conscious misbehavior or recklessness).

Plaintiffs can similarly establish the final element of their securities fraud claims—

transaction and loss causation. *Lentell v. Merrill Lynch & Co., Inc.*, 396 F3d 161, 172 (2d Cir.

2005) ("It is long settled that a securities-fraud plaintiff must prove both transaction and loss

causation."). "Transaction causation is akin to reliance," *Lentell, supra*, 396 F.2d at 172, and

requires only a showing that the misrepresentation was a "substantial, i.e., ... significant

contributing cause" of the investment decision that led to plaintiff's loss." *Wilson v. Comtech*

*Telecommunications Cor.*, 648 F.2d 88, 92 (2d Cir. 1981) (quoting *Herzfeld v. Laventhol,*

*Krekstein, Horwath & Horwath*, 540 F.2d 27, 34 (2d Cir. 1976)). Surely the record establishes as

much in the instant action.

Indeed, the only rational justification for plaintiff Goldstein's sizeable June 2010

investments in EMHI, an admitted "shell company" without active business operations,[32] was his

belief in the material misrepresentations of defendants Tyberg and Greene that he could maintain

a short-term, freely-tradable, position in a company for which Goldman Sachs was poised to set

the market at $7.00 per share (up from approximately $.40 per share) in light of the forthcoming

transfer of valuable environmental technologies from Solucorp to EMHI, which would, in turn,

net EMHI $30 million annually under the terms of an allegedly existing agreement between

---

[31] See *supra* notes 13-14, 22-23, and accompanying text.
[32] See *supra* note 4, and accompanying text.

Solucorp and First Solar.[33] In fact, Goldstein's name was at the very top of an EMHI-created list of investors who desired to sell their shares to Goldman Sachs at $7.00 per share.[34] As such, the record makes clear that said misrepresentations were the "cause" of plaintiffs' investment. But even if this were not the case, defendant Greene's foregoing omissions of fact would,[35] nevertheless constitute an adequate showing of transaction causation, as reliance is presumed where, as here, the omitted fact in question is material. *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153-154 (1972) ("Under the circumstances of this case, involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of th[e] decision.").

Loss causation likewise poses no issues to plaintiffs' securities fraud claims. It is merely "the causal link between the alleged misconduct and the economic harm ultimately suffered by plaintiff,", and requires a showing "that the subject of the fraudulent statement or omission was the cause of the actual loss suffered, i.e., that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security." *Lentell*, *supra*, 396 F.3d at 172-173 (quoting *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87 (2d Cir. 2001)) (internal quotations omitted). In other words, a plaintiff must show that the loss in question is not attributable to an intervening event, and that he would not have suffered a loss if the facts were what he believed them to be. See *Handelsman v. Gilford Secur.*, *Inc.*, 726 F. Supp. 673, 678 (N.D. Ill. 1989).  Here, there can be no question that had the investment scenario and related representations set forth by defendants Tyberg and Greene come

---

[33] See *supra* notes 7,9, 19, and accompanying text.
[34] Reidel Dep. Tr., Ex. 4, at pp.37-38;
[35] See *supra* note 15, and accompanying text.

to fruition, plaintiffs Goldstein and GGH would never have been left holding more than $1 million worth of undesirable, artificially-inflated, and essentially valueless EMHI shares.[36]

Accordingly, plaintiffs respectfully submit that the summary judgment requests of defendants Tyberg and Greene should be denied as to plaintiffs' securities fraud claims.

## B. Plaintiffs' Fraud Claims should be Upheld as to Defendants Tyberg and Greene

As with the other claims addressed herein, defendants have failed to submit any evidence in support of their request for judgment as a matter of law as to plaintiffs' fraud claim. As discussed more fully *supra*, for that reason alone defendants' purported motions should be denied. Defendants' motions should also be denied because there is clear evidence in the record supporting plaintiffs' fraud claim.

For a plaintiff to prevail on a claim of fraud under New York law, "he must prove five elements by clear and convincing evidence: (1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damages to the plaintiff." *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997) (citations omitted). "Because the elements of common-law fraud in New York are substantially identical to those governing § 10(b), the identical analysis applies." *Dodona I, LLC v. Goldman, Sachs & Co.*, 847 F. Supp. 2d 624, 639 (S.D.N.Y. 2012) (citing *In re Optimal U.S. Litig.*, 837 F. Supp. 2d 244 (S.D.N.Y. 2011)) (internal quotes omitted). Thus, as detailed exhaustively in the preceding section, defendants Tyberg and Greene are not entitled to judgment as a matter of law with respect to plaintiffs' common law fraud claims.

---

[36] See *supra* note 16, and accompanying text.

**C.      Plaintiffs' Promissory Estoppel Claims should be Upheld as to Defendants Tyberg and Greene**

It is well established under New York law that "to make out a claim for promissory estoppel, a plaintiff must prove (1) a clear and unambiguous promise, (2) reasonable and foreseeable reliance by the promise, and (3) unconscionable injury to the relying party as a result of the reliance." *Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 301 (2d Cir. 1996). Defendants have failed to submit any evidence in admissible form establishing a prima facie entitlement to judgment as a matter of law on this claim.  Furthermore, as set forth in greater detail *supra*, the record is clear that, prior to the June 2010 investments of Goldstein and GGH, defendant Tyberg definitively promised plaintiff Goldstein that EMHI had an agreement Goldman Sachs, under which the investment giant had agreed to buy-up, and set the market for, EMHI shares at $7.00 per share in the coming weeks, which would allow Goldstein and GGH to maintain short-term investment positions in EMHI at a significant profit.[37] These material misrepresentations were in large part responsible for inducing the June 2010 investments of Goldstein and GGH.[38] Goldstein had no reason to doubt Tyberg—after all, Tyberg was a fellow Orthodox Jew, with whom Goldstein shared a mutual Rabbi for whom he had much admiration and respect.[39] But as a result of Tyberg's deception, plaintiffs Goldstein and GGH were left holding undesirable EMHI shares for which they paid over $1,000,000 at an artificially inflated price and which are now virtually worthless.[40]

There is also evidence in the record that defendant Greene induced the June 2010 Goldstein and GGH investments by extending clear and unambiguous promises to plaintiff Goldstein that: (1) an existing contract between Solucorp and First Solar would net EMHI $30

---

[37] See *supra* note 19, and accompanying text.
[38] See *supra* notes 32-33, and accompanying text.
[39] Goldstein Dep. Tr., Ex. 2, at pp. 67-68; Tyberg Dep. Tr., Ex. 5, at p. 9.
[40] See *supra* note 16, and accompanying text.

million annually; and (2) EMHI was on the verge of filing an S-1 Registration that would render all restricted shares of EMHI freely tradable within 30-150 days.[41] These representations carried significant weight coming from defendant Greene, who was representing himself as, and/or being held out by various other defendants to be, EMHI's attorney,[42] and whom Goldstein, in turn, believed was bound to adhere to the ethical standards of conduct incumbent upon members of the bar.[43] These misrepresentations spurred the June 2010 investments of Goldstein and GGH by reinforcing the notion that Goldstein and GGH would be able to maintain short-term investment positions in EMHI, and lending credence to coinciding promises that Goldman Sachs would shortly set the market for EMHI at $7.00 per share. The substantial damage resulting to plaintiffs Goldstein and GGH was unconscionable under virtually any standard, especially one affording plaintiffs Goldstein and GGH the benefit of all favorable inferences.

Accordingly, the requests of defendants Tyberg and Greene for summary judgment should be denied as to plaintiffs' promissory estoppel claims.

**D.    Plaintiffs' Unjust Enrichment Claims should be Upheld as to Defendants Tyberg and Greene**

Under New York law, a claim for unjust enrichment requires a plaintiff to demonstrate that "(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Ashland Inc. v. Morgan Stanley & Co.*, 652 F.3d 333, 339 (2d Cir. 2011); *Cereus Prod. Dev., Inc. v. Boom LLC*, No. 14 Civ. 4292, 2015 U.S. Dist. LEXIS 73503, *21 (S.D.N.Y. June 5, 2015). Against this standard, it is readily apparent that plaintiffs' unjust enrichment claims are not properly suited for summary disposition.

---

[41] See *supra* notes 7-11, and accompanying text.
[42] See *supra* note 5, and accompanying text.
[43] Pls.' Second Am. Compl., Ex. 1, at ¶80, Ex. B; Goldstein Dep. Tr., Ex. 2, at p.146.

Despite representations to the contrary set forth in his letter-motion, the record plainly establishes that defendant Tyberg was enriched in the form of 407,000 EMHI shares that he received from defendants as a commission or "consulting fee" in connection with the role he played in manipulating and securing a commitment from Goldstein to invest in EMHI individually and on behalf of GGH.[44] Said commission was issued to Tyberg on October 20, 2010.[45] 20,000 EMHI shares were issued to defendant Greene on that same date, ostensibly in return for his efforts in securing the June 2010 investments of Goldstein and GGH.[46] In addition to these 20,000 shares, Greene admits having received 200,000 EMHI shares (and $50,000 bonus) for locating the EMHI "shell company,"[47] and another 500,000 EMHI shares for past services rendered.[48] And while defendant Greene generally denies having ever received commissions from EMHI,[49] such strong circumstantial evidence surely creates a genuine issue of material fact as to whether he received compensation in the form of EMHI shares, in connection with his role in soliciting the Goldstein and GGH investments.

Clearly, it would be against equity and good conscience to allow defendants to retain the compensation and commissions, as said monies and EMHI shares were obtained through the various material misrepresentations and omissions set forth herein. Accordingly, the requests of defendants Tyberg and Greene for summary judgment should be denied as to plaintiffs' unjust enrichment claims.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Honorable Court deny the "letter-motions" for summary judgment submitted by defendants Tyberg and Greene.

---

[44] See *supra* notes 22-23, and accompanying text.
[45] EMHI Ownership Registrar, Ex. 10, at p. 9.
[46] *Id.* at p. 21.
[47] Greene Dep. Tr., Ex. 7, at pp. 112-115.
[48] Greene Dep. Tr., Ex. 7, at pp. 211-212, 323.
[49] *Id.*

17

Dated: August 10, 2015                    Respectfully submitted,


                                          **HERZFELD & RUBIN, P.C.**


                                          ___/s/ Michael R. Rudick___

                                          Michael R. Rudick, Esq. (MR-1785)
                                          HERZFELD & RUBIN, P.C.
                                          *Attorneys for Plaintiffs*
                                          125 Broad Street
                                          New York, New York 10004
                                          (212) 471-8500
                                          mrudick@herzfeld-rubin.com

18